**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LYON FINANCIAL SERVICES, INC. d/b/a | ) | |
| US BANCORP BUSINESS EQUIPMENT | ) | |
| FINANCE GROUP and U.S. BANCORP | ) | |
| MANIFEST FUNDING SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10 C 6957 |
| | ) | |
| JUDE'S MEDICAL CENTER, LTD. d/b/a | ) | |
| LASER & COSMETIC DERMATOLOGY S.C. | ) | |
| and JAWDAT ABBOUD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY,  District Judge:

Lyon Financial Services, Inc., d/b/a US Bancorp Business Equipment Finance

Group and U.S. Bancorp Manifest Funding Services (Lyon) has sued Jude's Medical

Center, Ltd., d/b/a Laser & Cosmetic Dermatology S.C. (Jude's) and Jawdat Abboud.

Lyon claims that Jude's breached two contracts on which Abboud served as guarantor.

Jude's is currently in bankruptcy, so Lyon is currently proceeding against Abboud on his

guaranty.  Lyon has moved for summary judgment against Abboud.  For the reasons

stated below, the Court grants the motion in part and denies it in part.

**Background**

The Court takes the following facts from the parties' memoranda of law and

statements of uncontested facts.  On a motion for summary judgment, the Court

construes all facts favorably to the nonmoving party and makes reasonable inferences

in that party's favor. *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 552 (7th Cir. 2011).

Abboud, a medical doctor, served as CEO of Jude's. On September 7, 2007, he authorized Jude's to lease two "VelaShape" machines, manufactured by Syneron Inc., with financing provided by Lyon. Abboud agreed to guaranty Jude's obligations under the lease. The lease agreement required Jude's to make three monthly payments of $99.00 and sixty monthly payments of $4,594.82 to Lyon, as well as applicable taxes.

On September 12, 2008, Abboud authorized Jude's to lease an "Accent" machine, manufactured by Alma Lasers, Inc., with financing provided by Compass Funding Group. Abboud agreed to guarantee Jude's obligations under this lease as well. The lease agreement required Jude's to make sixty monthly payments of $2,226.21, as well as applicable taxes. On October 8, 2008, Compass assigned all of its right, title and interest in both the lease agreement and the guaranty to Lyon.

Jude's made a series of payments on both leases, but at some point it stopped paying. Lyon claims that payments ceased under the 2007 lease in June 2010 and under the 2008 lease in August 2010. Abboud admits that Jude's stopped paying at some point, but he disputes both the date of default and the remaining balance. Lyon repossessed the VelaShape machines and claims that it sold them for net proceeds of $2,500 in December 2010. It also repossessed the Accent machine, which it claims that it sold for net proceeds of $10,600 in November 2010. Abboud appears to dispute that there is sufficient evidence of whether the sales occurred at all, and he disputes that Lyon conducted them in a commercially reasonable manner.

On December 12, 2010, Jude's filed a bankruptcy petition under Chapter 11, and as a result the Court stayed further proceedings against Jude's. Abboud filed a

Chapter 13 bankruptcy petition on February 4, 2011.  The Court then dismissed this case without prejudice on February 8, 2011, to await the termination of bankruptcy proceedings.  Abboud's Chapter 13 case was later dismissed without prejudice for failing to meet statutory filling requirements, and the Court granted Lyon's motion to re-open the case against Abboud on June 23, 2011.  About a month later, Lyon moved for summary judgment.

Abboud later filed a motion to add the affirmative defense that Lyon's sale of the equipment was not commercially reasonable.  The Court directed Lyon to file a response and said that it would consider the motion along with the motion for summary judgment.

## Argument

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Abboud does not dispute that he agreed to serve as guarantor for Jude's, that Jude's missed a number of payments, or that he is therefore obligated to pay some amount of money to Lyon.  He argues instead that summary judgment is improper at this point because issues of fact remain regarding the amount that he owes.

**A.      Sufficiency of evidence of amounts owed**

Lyon bases its figures on an affidavit from Philip McGuigan, the "litigation supervisor" for U.S. Bancorp Equipment Finance and an authorized agent of Lyon. McGuigan states that he is the custodian of records relating to all contracts relevant to this case, and that he "ha[s] either personal knowledge of all events recorded within the records of Lyon regarding Jude's Medical Center, Ltd. and Abboud, or [he is] qualified and authorized to testify about the methods and processes used by Lyon to collect and record information and data . . . ."  McGuigan Aff. ¶ 6.  McGuigan sets out in his affidavit amounts drawn from Lyon's business records, which he adds to reach the total he claims Jude's (and therefore Abboud) owes under each lease.

McGuigan's calculations for the 2007 lease are:

| | |
|---|---|
| Past Due/Billed Payments (06/30/10 - 08/30/10) | $14,638.11 |
| 9/30/10 payment | $4,879.37 |
| Payments not invoiced, discounted at 6% | $139,794.93 |
| **Total Principal Balance:** | $159,312.41 |
| Less credit for sold equipment | ($2,500.00) |
| Late charges | $2,927.64 |
| Residual value | $23,212.98 |
| Prejudgment interest on principal balance from date of acceleration (09/30/10) to date of equipment sale (12/22/10), totaling 83 days at $34.92 per day | $2,898.18 |
| Prejudgment interest on remaining principal balance (12/23/10 - 07/19/11), totaling 208 days at $34.37 per day | $7,148.93 |
| **Total Amount Due:** | $193,000.14 |

McGuigan's calculations for the 2008 lease are:

| | |
|---|---|
| Past Due/Billed Payments (08/08/10 - 09/08/10) | $5,096.52 |
| 10/08/10 payment | $2,548.26 |
| Payments not invoiced, discounted at 6% | $83,765.38 |
| **Total Principal Balance:** | $91,410.16 |
| Less credit for sold equipment | ($10,600.00) |
| Late charges | $764.48 |
| Unobtained insurance fee | $180.86 |
| Residual value | $10,581.75 |
| Prejudgment interest on principal balance from date of acceleration (10/08/10) to date of equipment sale (11/24/10), totaling 47 days at $20.04 per day | $941.65 |
| Prejudgment interest on remaining principal balance (11/25/10 - 07/19/11), totaling 236 days at $17.71 per day | $4,179.99 |
| **Total Amount Due:** | $97,458.89 |

Abboud contends Lyon has offered inadequate evidence of the total amount it claims he owes. He argues first that he had no notice that McGuigan would serve as a witness because Lyon did not seek discovery or disclose McGuigan before moving for summary judgment. Abboud also contends that McGuigan does not have personal knowledge regarding the amounts owed.

Lyon responds that Abboud was not prejudiced by not being informed that McGuigan would be submitting an affidavit, because Abboud chose not to depose any witnesses. Lyon asserts that because McGuigan is the custodian of its business records, Abboud could have served a notice of deposition pursuant to Federal Rule of

Civil Procedure 30(b)(6) and determined the identity of McGuigan or another designated representative. Assuming disclosure was necessary, the Court is not persuaded that Abboud suffered any harm from the alleged nondisclosure. In the affidavit summarized above, McGuigan essentially has done nothing more than summarize documents that Abboud could have requested in discovery.

Abboud has presented no support for his contention that McGuigan's role as litigation supervisor and his knowledge of the record are insufficient to provide a basis for the facts to which he attests. McGuigan states in his affidavit that he is familiar with Lyon's record-keeping policy and that he has personally reviewed all of Lyon's records relating to its transactions with Jude's and Abboud. This is sufficient to demonstrate that his affidavit does not consist of "conjecture or speculation" but rather is "based on personal knowledge." *See Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998). The Court concludes that McGuigan has provided a sufficient basis for his attestations and that it may properly consider his affidavit.

Abboud's next argument is that McGuigan's affidavit is insufficient to establish the amount that Abboud owes Lyon. Abboud's primary contention is that Lyon has essentially denied him access to payment information. This assertion is based on a phone call to U.S. Bank by Abboud's receptionist, during which she was told by a customer service representative that there was a "litigation block" on records of these transactions. Abboud says that as a result, his only source of information regarding the payments is McGuigan's affidavit, which Abboud contends is insufficient both for his own arguments and for the Court's consideration.

McGuigan's original affidavit, which contained detailed calculations, likely would

have been sufficient for the Court to determine what Abboud owes even without any

additional records. *See LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 922 (7th Cir.

1997) ("In the face of [movant's] detailed affidavit calculating damages . . . the bare

assertion that the amounts may be inaccurate in some way [is, w]ithout more, . . .

insufficient to avoid summary judgment."). In addition, however, Lyon also provided

properly authenticated copies of its internal records of Jude's payments with its reply

brief. Although evidence presented for the first time in a reply brief is disfavored, *see*

*Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997), the Court finds that it may properly

consider these documents. Because Abboud contested the basis for the affidavit in his

response brief, it was appropriate for Lyon to include additional support with its reply.

Abboud did not request to file a surreply to respond to the additional documents, nor

has he claimed that his or Jude's payments were anything other than what Lyon has

claimed them to be.

Abboud's objection to McGuigan's calculations is based solely on his contention

that he did not have access to relevant records. These objections are unconvincing in

light of the fact that the disputed facts largely concern payments made or missed by

Abboud's own company. In addition, as the Court has noted, Jude's could have

requested them in litigation or could have made a submission, by affidavit, under Fed.

R. Civ. P. 56(d). The Court concludes that Abboud has not presented evidence from

which a reasonable fact finder could find that either Lyon's determination of the date on

which payments ceased or its calculation of the amount he owes is inaccurate.

Each lease states that Lyon will credit proceeds from resale of the leased

equipment against the total amount owed by the lessor. Accordingly, in its brief, Lyon

reduces the amount owed under each lease by these amounts. The Court agrees that the totals should be offset by these amounts, which it discusses below. Adding those amounts back into the totals for the moment, the Court finds that Lyon has proved that Abboud owes a total of $303,559.03, before offsetting the proceeds of resale.

For these reasons, the Court grants Lyon's motion for summary judgment on the issues of liability and with regard to the base amount that Abboud owes.

**B.      Commercial reasonableness of resale of equipment**

**1.      Abboud's motion to add an affirmative defense**

In his response to Lyon's motion for summary judgment, Abboud argued that there are genuine issues of fact regarding Lyon's resale of the leased equipment. He asserted that he was not given adequate notice of the sale and that this, along with the very low resale prices, demonstrates that the sale was not commercially reasonable as required by Minnesota's version of the Uniform Commercial Code (UCC). Lyon replied that commercial unreasonableness is an affirmative defense that Abboud waived because he failed to plead it when he filed his answer. Abboud then moved to add commercial reasonableness as a defense.

"As a rule, we have allowed defendants to amend when the plaintiff had adequate notice that a . . . defense was available, and had an adequate opportunity to respond to it despite the defendant's tardy assertion." *Robinson v. Sappington*, 351 F.3d 317, 332-33 (7th Cir. 2003). Lyon does not assert in its response to Abboud's motion that it lacked an opportunity to address the issue of commercial reasonableness. Indeed, Lyon addressed the issue at length in its reply in support of

its motion for summary judgment.  The Court concludes that Lyon has had a fair

opportunity to address the issue of commercial reasonableness and therefore grants

Abboud's motion to add it as an affirmative defense.

**2.      The resale**

The parties agree that Minnesota law governs the interpretation of the lease.

Abboud contends first that the lease has created a security interest under Minn. Stat. §

336.1-203(b), which states,

> A transaction in the form of a lease creates a security interest if the consideration
> that the lessee is to pay the lessor for the right to possession and use of the
> goods is an obligation for the term of the lease and is not subject to termination
> by the lessee, and:
>> (1) the original term of the lease is equal to or greater than the remaining
>> economic life of the goods;
>> (2) the lessee is bound to renew the lease for the remaining economic life
>> of the goods or is bound to become the owner of the goods;
>> (3) the lessee has an option to renew the lease for the remaining
>> economic life of the goods for no additional consideration or for nominal
>> additional consideration upon compliance with the lease agreement; or
>> (4) the lessee has an option to become the owner of the goods for no
>> additional consideration or for nominal additional consideration upon
>> compliance with the lease agreement.

Although Abboud was obligated to pay Lyon for the term of the lease, he has not

provided any evidence from which a reasonable fact finder find that the agreement

exhibits any of the other four characteristics that would create a security interest.

Therefore, Article 9 of Minnesota's version of the UCC, which expressly requires

commercial reasonableness in a sale, is not directly applicable.  *Deutz-Allis Credit Corp.*

*v. Jensen*, 458 N.W.2d 163, 166 (Minn. App. 1990).  The leases both establish that

Article 2A of Minnesota's UCC governs Lyon's options in the event of default by Jude's.

Article 2A allows a lessor to re-sell leased property in order to mitigate damages caused

by a breaching lessee, but it does not expressly require that the sale be "commercially reasonable."  *See* Minn. Stat. § 336.2A-528.

Nonetheless, "[i]t is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages."  *Deutz Allis*, 458 N.W.2d at 166.  "While the Uniform Commercial Code's concept of 'commercial reasonableness' in a secured transaction is not directly applicable in this case, Minnesota courts find it 'helpful in determining mitigation of damages issues' when leased property is repossessed and resold.'"  *Lyon Fin. Servs., Inc. v. Oxford Maxillofacial Surgery, Inc.*, No. 08 C 5498, 2009 WL 2170999, at *4 (D. Minn. July 17, 2009) (quoting *Deutz-Allis Credit Corp.*, 458 N.W.2d at 166).  "The burden is on the non-breaching party to demonstrate the reasonable mitigation of damages."  *Id*. (citing *Elk River Ford, Inc. v. Hoecherl*, 428 N.W.2d 857, 859 (Minn. App. 1988)).

Abboud contends that Lyon did not provide him with adequate notice of its private sale.  Although he does not cite to any authority requiring notice in a sale of equipment after default in a lease, as opposed to a security agreement, the UCC does suggest that such notice is important in establishing that a resale is reasonable.  "Where the resale is at a private sale the seller must give the buyer reasonable notification of an intention to re-sell."  Minn. Stat. § 336.2-706(1); *see also Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 793 (8th Cir. 2009).  Lyon has provided two letters that it sent to Abboud, one for each lease, stating that the leased equipment "will be sold on or after September 13, 2010" and asking for "suggestions that might help in obtaining the maximum sale amount possible."  McGuigan Supp. Aff. Ex. 5.

Abboud takes issue with the content of the letters in his motion to add an affirmative

defense, but he does not dispute receiving them. No reasonable fact finder could find

that they failed to provide reasonable notification of Lyon's intent to re-sell.

Abboud argues next that the amount Lyon claims to have received in exchange

for the equipment is so low that it gives rise to a genuine issue of fact as to whether

Lyon reasonably mitigated its damages. Lyon's only evidence of the steps it took to sell

the equipment is provided in a supplemental affidavit from McGuigan, who states:

> Lyon retained Chiromed Equipment Systems, Inc. ("Chiromed") to coordinate the sale of the First Lease Equipment [the subject of the 2007 lease]. Chiromed sent bid sheets to potential buyers and dealers on September 2, 2010. The bid sheets reflected certain damage to the First Lease Equipment that required repair. The vendor, Syneron, refused to repair the First Lease Equipment unless the purchaser paid a $15,000.00 relicensing fee, making it cost prohibitive to repair the First Lease Equipment. The First Lease Equipment was sold on or about December 13, 2010 to National Equipment for net sale proceeds of $2,500.00. The amount received was reasonable due to the limited market and condition of the First Lease Equipment. . . .
>
> Lyon retained Chiromed to coordinate the sale of the Second Lease Equipment [the subject of the 2008 lease]. Chiromed sent bid sheets to potential buyers and dealers on September 2, 2010. The bid sheets reflected certain damage to the Second Lease Equipment that required repair. The vendor, Alma Lasers [sic] refused to repair the Second Lease Equipment unless the purchaser paid a relicensing fee, making it cost prohibitive to repair the Second Lease Equipment. Chiromed received bids for $7,500.00 and $8,000.00 for the Second Lease Equipment prior to its sale. The Second Lease Equipment was sold on or about November 16, 2010 to [sic] for net sale proceeds of $10,600.00. The amount received was reasonable due to the limited market and condition of the Second Lease Equipment.

McGuigan Supp. Aff. ¶¶ 13-25. The exhibits to McGuigan's supplement affidavit

include bid sheets for the sale of the 2007 lease equipment but not for the sale of the

2008 lease equipment. Lyon provides no other documentation regarding either sale.

In contrast to McGuigan's earlier affidavit regarding what the records showed

11

regarding the amounts owed and paid on the leases, there are some problems with his

supplemental affidavit. First, McGuigan provides no supporting documentation for two

key contentions he makes regarding the resales, specifically, his contentions that the

each of the vendors of the equipment refused to repair it the unless it received a

significant fee. Given McGuigan's limited role as record custodian, there is no proper

foundation for these statements. Second, McGuigan's conclusion that the amount

received in each sale "was reasonable due to the limited market and condition of the . ..

Lease Equipment" likewise lacks a sufficient foundation.

Though the parties seem to dispute the original prices for the equipment, it

appears that the amount Lyon received for the two VelaShape machines represents

less than two percent of their purchase price, and the amount it received for the Accent

machine represents around ten percent of its purchase price. That is a rather low

amount, even considering depreciation. "[A] low price suggests that a court should

scrutinize carefully all aspects of a disposition to ensure that each aspect was

commercially reasonable." Minn. Stat. § 336.9-610 cmt. 10.

In *Oxford*, a Minnesota district court considered a case involving Lyon with facts

much like this one. The court concluded, on similar facts, that there were genuine

issues of material fact regarding reasonable mitigation. Among other things, the court

in *Oxford* concluded, and this Court agrees, that under Minnesota law, the fact "[t]hat

Lyon followed its usual resale practices does not, in and of itself, render the sale

commercially reasonable. Moreover, the fact that Lyon requested resale assistance

from [a lessee] does not dissolve its duty to reasonably mitigate its damages." *Oxford*,

2009 WL 2170999 at *5. As in *Oxford*, the Court concludes that there is insufficient

information regarding the sale and the circumstances leading up to and surrounding it to permit summary judgment in Lyon's favor on this point.  Further discovery and fact-finding will be required.

**C.**     **Attorney's fees**

Lyon seeks to recover $25,686.63 in attorney's fees and expenses it has incurred in this lawsuit.  Because the case is not fully disposed of on summary judgment, the Court defers consideration of attorney's fees to a later date.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion for summary judgment in part and denies it in part [docket no. 29] and grants defendant's motion to add an affirmative defense [docket no. 43].  The case is set for a status hearing on December 14, 2011 at 9:30 a.m. to set a schedule for further proceedings.

_____
            MATTHEW F. KENNELLY
            United States District Judge

Date:  December 5, 2011